```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA

                   CASE NO. 08-80688-CIV-ZLOCH
```

VAN CLEEF & ARPELS, S.A.,
and VAN CLEEF & ARPELS, INC.,

      Plaintiffs,

vs.                                      **O R D E R**

TENN ANGEL, INC., and ANDREW
KOVLER,

      Defendants.
_____/

THIS MATTER is before the Court upon Plaintiffs' Motion For Partial Summary Judgment (DE 27). The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

Plaintiffs Van Cleef & Arpels, S.A. and Van Cleef & Arpels, Inc. filed this action alleging, among other things, violations of the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq. (2006). They now move for partial summary judgment on their copyright claim only. The essence of their argument is that Plaintiff Van Cleef & Arpels, Inc. holds a valid copyright in a particular jewelry design and that Defendants infringed it. Defendants take the position that neither Plaintiff is the proper party to bring this suit because neither is the owner of a copyright or author of the jewelry design in question. In the alternative, they argue that even if Plaintiffs' work is copyrightable and protected, they did not infringe it. For the reasons expressed more fully below, the

Court finds that genuine issues of material fact remain on the question of the authorship of the necklace design.  Therefore, the instant Motion shall be denied.

## I. Background

The jewelry brand known as Van Cleef & Arpels is used by the Van Cleef & Arpels family of companies (hereinafter sometimes "VCA").  There are two Plaintiffs in this action: Van Cleef & Arpels, Inc., a New York corporation, and Van Cleef & Arpels, S.A., a Swiss company.  They are affiliated with each other and are both part of the Richemont Group.  DE 31, ¶ 8.

Prior to being rearranged into the present organization of the Van Cleef & Arpels family of companies, a company called Van Cleef & Arpels, S.A. (France) was the flagship VCA company.  Id. ¶ 4. Two brothers, Jacques and Pierre Arpels, headed Van Cleef & Arpels, S.A. (France).  Id.  Its wholly owned subsidiary, a French company known as SLEPRA,[1] functioned as the VCA design house.  Id. ¶ 5. New jewelry designs developed through SLEPRA would be marketed by Van Cleef & Arpels, S.A. (France) through the stores and boutiques it owned and operated.  Id.  Van Cleef & Arpels, Inc., a New York company, was in existence at this time but had no formal corporate relationship with Van Cleef & Arpels, S.A. (France).  Id. ¶ 6. Of course, it had an informal relationship with the European

---

[1] SLEPRA is "Arpels" backwards and stands for Société de Lapidaires et Professionels de la Recherche Artistique.

companies, and was headed by another brother Claude Arpels. Id. Van Cleef & Arpels, Inc. operated a boutique on Fifth Avenue in New York City, where it manufactured some jewelry and also sold other items imported from Van Cleef & Arpels, S.A. (France). Id.

In 1999, the Richemont Group acquired the Van Cleef & Arpels family of companies. Id. ¶¶ 3, 7. A company by the name of Florence International, S.A. became known as Van Cleef & Arpels Holding France and took over all assets of Van Cleef & Arpels, S.A. Id. ¶ 7. Van Cleef & Arpels Holding France remains an active company today. Id. Most intellectual property assets were transferred to Van Cleef & Arpels Logistics, S.A., which is a Swiss company that recently changed its name to Van Cleef & Arpels, S.A., and is a Plaintiff in this action. Id. Plaintiff Van Cleef & Arpels, Inc. and Van Cleef & Arpels Holdings France are corporate affiliates of Van Cleef & Arpels, S.A., and all are part of the Richemont Group. Id. ¶¶ 7, 8.

Micheline Roussier, a French national, was the Chief Designer of SLEPRA, and she reported to Jacques and Pierre Arpels. Deposition of Micheline Roussier, DE 29, Ex. A, pp. 20, 22. Ms. Roussier worked with several members of the design team and with an independent manufacturing workshop. Id. pp. 20, 27-28. A man referred to only as Mr. Wildenstein was the contact at the independent manufacturing workshop. Id. p. 28. In 1968, SLEPRA began working on a new jewelry design. Id. p. 25. Between SLEPRA

and Mr. Wildenstein's independent manufacturing workshop, the Alhambra jewelry design was born. Id. pp. 27-28. The record is unclear as to exactly how the design was created, but it was brought to Pierre Arpels, who approved the design and ordered several items for production. Id. pp. 29-30. The Alhambra design is now a well-known Van Cleef & Arpels standard, consisting of several "quatrefoils" placed evenly along the chain of a necklace or bracelet. The quatrefoil is similar to a four-leaf clover found in nature.

In the summer of 2007, Defendant Andrew Kovler was in New York City with his wife and children. Deposition of Andrew Kovler, DE 29, Ex. B, p. 45. The record is unclear as to the reason for this visit. While shopping just off Canal Street, they visited a small store selling jewelry, including "knockoffs" of famous brands. Id. pp. 45, 48. Kovler's wife Kerri Kovler saw some non-Van Cleef & Arpels branded jewelry and immediately recognized it as similar to the quatrefoil of the Alhambra design. Id. pp. 45-46. She mentioned this striking similarity to her husband. Id. p. 45. For less than $200, Kovler purchased about fifteen pieces, a dozen of which he intended for resale in Teen Angel stores in Florida. Id. pp. 46, 49-50. Upon return to Florida, he placed several necklaces in the Teen Angel store in Palm Beach Gardens because "the demographics in that neighborhood" included "upscale" people more likely "to recognize or know Van Cleef & Arpels." Id. p. 50.

Plaintiffs filed suit to redress Defendants' infringement of their intellectual property rights in the Alhambra jewelry design. They now move for summary judgment only on their copyright claim.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation omitted).  Indeed,

> the moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991); Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

The moving party is entitled to "judgment as a matter of law"

5

when the non-moving party fails to make a sufficient showing of an essential element of the case to which the non-moving party has the burden of proof. Celotex Corp., 477 U.S. at 322; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987). Further, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### III. Analysis

The sole Count for disposition in the instant Motion is the copyright claim in Count I of Plaintiffs' Complaint (DE 1). Plaintiffs claim that Defendants infringed their federally protected copyright interest in the Alhambra necklace. Defendants' principal argument in response is that the Alhambra necklace was not authored by Plaintiffs. In the alternative, they argue that their actions regarding it do not constitute infringement. Based on the Court's finding below that genuine issues of material fact prevent a finding as a matter of law that either Plaintiff is the author of the Alhambra necklace, Defendant's conduct will not be addressed.

To prove copyright infringement, Plaintiff must establish ownership of a valid copyright in the Alhambra necklace. Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). For works created after 1977, "[c]opyright protection subsists . . . in original works of authorship fixed in any

6

tangible medium of expression." 17 U.S.C. § 102(a). This protection extends to sculptural works, which includes jewelry. Id. § 102(a)(5); Norris Indus., Inc. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 924 (11th Cir. 1982).

Defendants failed to contradict Plaintiffs' Concise Statement Of Material Facts (DE 28). This is always a treacherous tactical decision, because all facts stated therein and supported by the record are deemed admitted. S.D. Fla. L.R. 7.5.D; Josendis v. Wall to Wall Residence Repairs, Inc., 606 F. Supp. 2d 1376, 1380-81 (S.D. Fla. Mar. 30, 2009). Notwithstanding this failure, though, the Court finds that a genuine issue of material fact remains as to the ownership of copyright in the Alhambra jewelry design. Plaintiffs point to several documents in the record supporting their claim of being the successors to the authors of the Alhambra necklace. See DE 28, ¶ 1, citing DE 32, ¶ 7 ("Van Cleef & Arpels, Inc. is the owner of the copyright asserted in this case."), and DE 31, ¶ 7; see also DE 31, ¶¶ 9-11 (stating that the ownership of the Alhambra jewelry design was transferred to Plaintiff Van Cleef & Arpels, Inc.). However, the record also contains deposition testimony of Micheline Roussier, the former Chief Designer for Van Cleef, and head of SLEPRA, wherein she seems to suggest that the Alhambra design was authored by an independent contractor:

> Q. Could the witness elaborate on what is "the creative process"?
>
> A. Well, we talked with Mr. Wildenstein about doing an

> object for the boutique inspired by the clover. He worked on it. There were [sic] a lot of back and forth between us. I don't recall if these were drawings or models, and we worked a lot, and in a few months, Mr. Wildenstein brought three colored chains which were Alhambra chains, which were quite beautiful, and I presented them to Mr. Pierre Arpels and he ordered them.

DE 29, Ex. A, pp. 29-30.  Ms. Roussier elsewhere discusses the efforts of Mr. Wildenstein, in his workshop, in creating the original designs of what now is the Alhambra series of jewelry. <u>Id.</u> p. 33 ("There was Mr. Wildenstein who had them done at his workshop."); <u>see also</u> <u>id.</u> pp. 32-35.  This deposition was filed by Plaintiffs.[2]

The copyright in a work created by an independent contractor, absent assignment, is not the property of the hiring party. <u>Howard v. Sterchi</u>, 974 F.2d 1272, 1278 (11th Cir. 1992).  Rather, the work is considered by the law to have been authored by the independent contractor. <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 737 (1989) ("As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection.").  That individual owns the copyright. <u>Sterchi</u>, 974 F.2d at 1278.  However, if an independent contractor and the hiring party together create the work, they may be called co-authors and together enjoy the protections of copyright.  A collective work is

---

[2] The Parties do not dispute that Mr. Wildenstein was an independent contractor of SLEPRA. DE 50, pp. 4-5; DE 54, p. 3.

one "in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101. In such a case, both contributors are the authors and both retain the copyright.

Plaintiffs have not established that the Alhambra necklace design would satisfy the collective work provisions of the Copyright Act. The record is unclear on the level of input by Van Cleef and Mr. Wildenstein, and whether the two parties collaborated, each contributing "separate and independent works" to the "collective whole." See Reid, 490 U.S. at 753 (finding independent contractor to have authored sculpture, but remanding to consider whether the hiring party was a joint author). Ms. Roussier's testimony suggests that Mr. Wildenstein, an independent contractor, worked on the design of the Alhambra necklace for "a few months" and then the designs were presented to Mr. Arpels, who ordered three of then. Plaintiffs have failed to offer a satisfactory explanation for why Mr. Arpels would have to order something that Van Cleef itself authored.[3] The Court finds that a genuine issue of material fact remains as to the authorship of the

---

[3] At the time of the design of the Alhambra motif, SLEPRA was a wholly owned subsidiary of Van Cleef & Arpels, S.A. (France). To the extent that Ms. Roussier in her deposition was attempting to observe the corporate formalities between Van Cleef & Arpels, S.A. (France) and SLEPRA, her phrasing of the transaction with Mr. Arpels ordering the necklaces she received from Mr. Wildenstein, rather than Van Cleef & Arpels, S.A. (France) ordering designs from SLEPRA, further evidences some distance between Mr. Arpels/VCA and the author of the Alhambra design.

Alhambra jewelry design and, thus, its copyright.  As this is a threshold issue in this case, the instant Motion will be denied.  The Court does not pass on other questions raised by Plaintiffs' Motion.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Plaintiffs' Motion For Partial Summary Judgment (DE 27) be and the same is hereby **DENIED.**

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___21st___ day of August, 2009.

                                                    _/s/ William J. Zloch_
                                                    WILLIAM J. ZLOCH
                                                    United States District Judge

Copies furnished:

All Counsel of Record